**LEITMAN et al. v. LEARY & OWENS MACHINERY CO., Inc.**

No. 13827.

United States Court of Appeals
Fifth Circuit.

June 30, 1952.

Charles W. Greer, Birmingham, Ala., for appellant.

Andrew J. Thomas, Birmingham, Ala., for appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

STRUM, Circuit Judge.

Plaintiffs below appeal from an adverse judgment in a suit to recover profits lost because of an alleged breach of contract by defendant below, appellee here.

Preparatory to letting a contract for its requirements of automobile tires and tubes during the fiscal year beginning October 1, 1949, the State of Alabama, through its purchasing department, issued its inquiry #101, dated August 3, 1949, inviting bids. Defendant below wished to submit a bid, and sought a wholesale dealer connection through which to secure tires and tubes with which to fulfill any contract it might enter into with the State.

As a result of prior negotiations between plaintiffs and defendant below, the former being wholesale dealers in All-State and Schenuit tires, plaintiffs agreed to furnish to defendant, and it is alleged that defendant agreed to buy from plaintiffs, defendant's requirements of tires and tubes for the purpose stated.[1]  Based on this alleged agreement, defendant submitted its bid to supply All-State or Schenuit tires to fill the State's requirements.  Plaintiffs and defendant further agreed, however, that the sales contract between them, just mentioned, should not become effective unless defendant's bid, submitted in response to the State's inquiry #101, should be accepted.

There were other bidders, but neither defendant nor any other bidder was "low" on all sizes of tires, some bidders being low on one size, but high on others, so that no one bidder submitted the lowest bid on the complete list of tires and tubes covered by inquiry #101.  Consequently, the State refused to accept any of the original bids, including that of defendant, submitted pursuant to inquiry #101.

Defendant then made a new proposal through the State's purchasing department to furnish the State its requirements in all sizes of tires and tubes at the lowest price bid on the respective sizes by any bidder in response to said inquiry #101.  This proposal was accepted by the State, provided the tires and tubes to be furnished met State specifications, and were made by a manufacturer maintaining a plant in Alabama.  The latter requirement had the practical effect of limiting the brands of tires to Goodyear and Goodrich.

Thereafter, negotiations were had between defendant and plaintiffs to ascertain whether the latter could furnish to defendant the State's requirements in brands which would comply with the last stated requirements.  Plaintiffs being unable to furnish either Goodyear or Good-

---

1. While the contract of August 1, 1949, obligated plaintiffs to "deliver," it is at least debatable whether the supposed contract created any obligation on the part of the defendant to "buy."  That question, however, is pretermitted.

rich tires, no definite or valid contract resulted from these negotiations.

With the approval of the State purchasing department, defendant then entered into an agreement with Goodyear to supply its requirements. During the fiscal year in question all tires were purchased by the State through defendant on orders sent directly by the State to Goodyear Company.

Thereupon, appellants sued to recover the profits of which they claim they were deprived by defendant's alleged wrongful failure to purchase through them. Hearing the case without a jury, the trial court found that there was no definite or valid contract between plaintiffs and defendant, and rendered judgment for defendant below. That judgment is now here for review.

Although there are conflicts and inconsistencies in the evidence, the findings of the trial judge are well supported. Effectiveness of the original contract between plaintiffs and defendant was conditioned upon acceptance by the State of defendant's proposal to supply tires pursuant to inquiry #101. The trial judge found that the State's purchasing department "refused to accept any of the bids, including that of defendant, submitted in response to inquiry No. 101." There is ample evidence to support that view. This left the parties free to begin negotiations anew.[2]

Defendant then submitted a new and independent proposal, which was accepted by the State with the proviso that defendant would furnish a tire manufactured in Alabama which would meet the State's specifications. Defendant then negotiated further with plaintiffs as a prospective source of supply, but the latter were dealers only in brands which were unacceptable to the State, consequently these negotiations did not culminate in a contract. Defendant then turned to Goodyear for its requirements, that being a brand of tire acceptable to the State.

The evidence supports the view of the trial judge that the bid ultimately accepted was the result of new and independent negotiations between defendant and the State, and not the result of the original proposal pursuant to inquiry #101. There is no evidence of subterfuge in the new negotiations, nor in the contract between defendant and the State which eventuated therefrom.

The judgment appealed from being supported by the evidence, it is

Affirmed.

2. We have not overlooked plaintiffs' Exhibit "B," a letter from the State's purchasing department to defendant, dated September 20, 1949, which states in part: "This is to advise your bid of August 3, 1949, submitted under inquiry #101 has been accepted by the Department of Finance, to furnish tires and tubes during the next fiscal year beginning October 1, 1949. Likewise your subsequent proposal was approved by the Director of Finance to furnish to the State of Alabama all sizes of tires and tubes that may be required at the lowest prices bid on the respective sizes. All tires to be furnished to meet State specifications and shall be 100 level grade or better." The evidence supports the view that it was the latter proposal which was really accepted was subsequent to the rejection of the original bid. Nor have we overlooked plaintiffs' Exhibit 12, a letter from defendant to the State's purchasing department, dated October 17, 1949, relating to the performance of defendant's contract, which also refers to inquiry #101. Any anomaly or inconsistency in these references to inquiry #101 would constitute a conflict in the evidence, to be resolved by the trial judge upon a consideration and comparison of countervailing evidence.